IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DENNIS C. ACKER, | : | CIVIL ACTION |
| Plaintiff | : | |
| vs. | : | NO.  06-CV-03670 |
| COCA-COLA NORTH AMERICA, | : | |
| Defendant | : | |

MEMORANDUM OPINION AND ORDER

GOLDEN, J.                                                                                                          OCTOBER 5, 2007

    This action was originally commenced by Plaintiff in the Court of Common Pleas of Lehigh County, then removed by Defendant to this Court on the basis of federal question jurisdiction. Plaintiff claims the Defendant terminated his employment in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq.  Plaintiff also asserts a state law claim for wrongful discharge in retaliation for filing a workers' compensation claim.  Presently before the Court is the motion of the Defendant for summary judgment. For the reasons which follow, the motion is granted.

    Under Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322-32 (1986).  In deciding a motion for summary judgment, all facts must be viewed and all reasonable inferences must be drawn in favor of the non-moving party. Matsushita Elec. Indus. Co.,Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  In order to defeat a motion for summary judgment, the pleadings must show evidence from which the finder of fact could reasonably find for the party opposing judgment. Anderson v. Liberty Lobby, inc., 477 U.S. 242, 250 (1986).

The following material facts are recited in large part from Defendant's Statement of Undisputed Facts[1], all of which Plaintiff admits are not in dispute[2]:

1. Plaintiff was hired by Defendant in 1997 as an Operations Technician at Defendant's Lehigh Valley Syrup Plant (the "Plant"). Deposition of Dennis C. Acker at 38. As an Operations Technician, Plaintiff drove a forklift, ran the FIGAL line[3], operated the box former and performed pallet building. Id. at 40-43.

2. An Operations Technician is required, as part of the essential functions of the job, to lift over 50 pounds and walk, stand and squat for extended periods of time. Affidavit of R. Stephen Morrow, General Manager of the Plant at ¶ 6.

3. As part of Plant policy, Coca-Cola employees who are unable to perform the regular duties of their position may be given modified work assignments to accommodate temporary, physician-documented work restrictions. Id. at ¶ 10.

4. Whether an employee is placed in a modified work assignment is a case-by-case determination that depends on the employees's qualifications, the nature of his restrictions, the availability of work compatible with those restrictions, and the Company's business and personnel needs. Id.

5. Under Company policy, modified work assignments are limited to no more than ninety days in a given twelve-month period. Id. at ¶ 11.

---

[1] See Document #29-3.

[2] See Document #33-2.

[3] This job required Plaintiff to run a production line which fills five-gallon containers with beverage concentrate.

2

6. On August 11, 1998, Plaintiff injured his knee at work when he slipped and fell while working the FIGAL line. Acker Dep. at 49, 50; Acker Dep.Ex.3.

7. An individual from Defendant's Human Relations Department immediately took Plaintiff to a clinic for evaluation and promptly reported the incident to Defendant's workers' compensation carrier. Acker Dep. at 52; Morrow Aff. at ¶ 7.

8. Plaintiff had two knee surgeries following his injury. Acker Dep. at 54, 56; Acker Dep. Ex.3.

9. Prior to his knee injury, the essential requirements of Plaintiff's Operations Technician position required him to, among other things, lift over 50 pounds and walk, stand and/or squat for extended periods of time. Morrow Aff. at ¶ 6.

10. Plaintiff was unable to perform those essential functions of his Operations Technician position following his knee injury. Acker Dep. at 40-43, 60, 63, 66, 69, 101.

11. Following Plaintiff's injury, Defendant placed him in a temporary modified work assignment doing office work, until his first surgery was performed on August 31, 1998. Id. at 53; Acker Dep. Ex.3.

12. Plaintiff returned to work on December 15, 1998 and Defendant placed him in a modified work assignment driving a forklift and floor scrubbing machine. Acker Dep. at 57-58, 149-150; Acker Dep. Ex.3.

13. Plaintiff had a second knee surgery on January 28, 1999. Acker Dep. at 56. Acker Dep. Ex. 3.

14. Plaintiff returned to work on April 5, 1999, and Defendant again placed him on a modified work assignment driving a forklift and floor scrubbing machine. Acker Dep. at 57, 58, 149-150. Acker Dep. Ex. 3.

15. Aside from driving a forklift and the floor scrubbing, Plaintiff performed none of the regular duties of an Operations Technician following his injury, and Plaintiff remains unable to perform the essential functions of an Operations Technician. Acker Dep. at 40-43, 60, 63, 66, 69, 101.

16. On April 11, 2003 Defendant informed Plaintiff that it could not continue his modified work assignment any longer. As a result, Plaintiff applied for and received additional workers' compensation benefits in lieu of the pay he had been receiving from Defendant. Morrow Aff. at ¶ 18.

17. Plaintiff's employment with Defendant was terminated effective May 23, 2004. Id. at ¶ 21.

18. At no time was Plaintiff offered a transfer to night shift, a shift which Plaintiff believed would have allowed him to continue as a forklift operator.

19. Plaintiff dual-filed a charge of discrimination with the Pennsylvania Human Relations Commission ("PHRC") and the Equal Employment Opportunity Commission ("EEOC") on December 1, 2004. Acker Dep. at 137, 138, Acker Dep. Ex. 18.

20. Plaintiff's charge contains no allegation that Defendant discriminated against him on the basis of his disability by denying him overtime. Id.

21. Plaintiff became aware of Defendant's purported decision to place him "at the bottom of the list" for overtime no later than March 29, 2001.  Acker Dep. at 115-116, Acker Dep.Ex.15.

22. The EEOC issued a Right to Sue Letter to Plaintiff on September 22, 2005.  Acker Dep. Ex. 21.

23. Plaintiff filed his Complaint on July 19, 2006.

24. At the time of his termination of employment, Plaintiff was unable to perform the essential functions of his Operations Technician position, with or without a reasonable accommodation, and he remains unable to do so.  Acker Dep. at 40-43, 60, 63, 66, 69, 101.

25. Plaintiff's modified work assignment driving a forklift and floor scrubber was never a regular position at the Plant.  Id. at 91, 144, 147.

26. With regard to Plaintiff's workers compensation claim, his overtime was never properly calculated into his average weekly wages by Defendant's workers' compensation carrier.  Plaintiff filed penalty petitions and Plaintiff received his back pay wages, 20% penalty and interest on all the monies.  Plaintiff was terminated approximately six months after he received a final verdict on the penalty petitions and nearly six years after he initially applied for workers' compensation following his August 11, 1998 knee injury.  Id. at 103, 111.

27. Neither Defendant nor any of its employees ever did anything to discourage Plaintiff from seeking workers' compensation benefits.  Id. at 55, 59, 106-107.

28. A human resources manager at the Plant helped Plaintiff to complete the necessary paperwork to apply for workers' compensation benefits.  Id. at 55, 103.

The Court first addresses Plaintiff's claim under the ADA. Defendant submits that Plaintiff has not established a prima facie case of discrimination under the ADA. To establish a prima facie case of disability discrimination under the ADA, Plaintiff must show: (1) he has a "disability"; (2) he is a "qualified individual"; and (3) he suffered an adverse employment action because of his disability. Deane v. Pocono Med. Ctr., 142 F.3d 138, 142 (3d Cir. 1998). Defendant does not dispute that Plaintiff is "disabled" for purposes of the ADA or that he suffered an adverse employment action. However, Defendant contends Plaintiff is not a "qualified individual" since he could no longer perform the essential functions of his job. The Court agrees.

A "qualified individual' for purposes of the ADA is defined as one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The EEOC regulations divide this inquiry into two parts: (1) whether the individual has the requisite skill, experience, education and other job-related requirements of the position sought; and (2) whether the individual, with or without reasonable accommodation, can perform the essential functions of that position. 29 C.F.R. § 1630.2(m).

The parties do not dispute that Plaintiff satisfies the first part of the inquiry. As to the second inquiry, Plaintiff himself testified at his deposition that he could not perform the essential functions of his job after his knee injury and up the time he was terminated. Acker Dep. at 40-43, 60, 63, 66, 69, 101. Specifically, Plaintiff testified that his normal duties as an Operations Technician included operating a box former, running a production line that fills five-gallon containers with beverage concentrate and building pallets and loading them onto trucks with a forklift. Id.. at 38, 40-43. Plaintiff also testified that after his injury, other than driving a forklift and floor scrubber, he was

6

unable to operate a box former, run the FIGAL line or build pallets because they all required him to bend, squat, and/or remain on his feet for extended periods of time. Id. at 40-43, 101. Based on his own testimony, Plaintiff could not perform the essential functions of his job without accommodation.

Defendant contends that it reasonably accommodated Plaintiff. The Court agrees. The ADA provides that reasonable accommodations include, inter alia, "job restructuring, part-time or modified work schedules, [and] reassignment to a vacant position." 42 U.S.C. §12111(9)(B). The Court finds that Defendant reasonably accommodated Plaintiff by allowing him to perform light work (operating a fork lift and floor scrubber) for nearly six years after his injury even though such work did not encompass the essential functions of Plaintiff's previous job as a Operations Technician and even though, pursuant to Defendant's policy, such modified work assignments are limited to a period of 90 days. Plaintiff has not offered any evidence that any other similarly-situated employee at the Plant received such a generous accommodation.

Plaintiff argues that Defendant refused to provide him with a reasonable accommodation under the ADA by allowing him to continue his modified assignment indefinitely. The Court rejects this claim as a matter of law. The Third Circuit has specifically held that an employer is not required to transform a temporary light duty position into a permanent position. Buskirk v. Apollo Metals, 307 F.3d at 160, 169 (3d Cir. 2002). (After fifteen months, the employer ended the modified duty and terminated the employee because he remained unable to perform the essential functions of his former position). Id. at 163, 169. (citation omitted). In Buskirk, the Third Circuit also held that the ADA does not require an employer to create a new position to accommodate an employer with a disability. Id. (citation omitted).

Plaintiff also claims that the modified job assignment he performed (driving a forklift and floor scrubber) became a permanent position because Defendant allowed him to remain in it beyond the 90-day limit provided under Defendant's policy. The Court also rejects this argument as a matter of law. See e.g. Champ v. Baltimore County, 884 F.Supp. 991, 999-1000 (D.Md. 1995) (holding that city allowing a police officer to perform light-duty position over 16 year period did not convert it into a permanent position and Plaintiff's ADA claim failed because he could not identify any permanent position he could perform with his physical limitations) (citations omitted). To conclude otherwise would be akin to punishing Defendant for giving Plaintiff substantial aid by allowing him to stay in a modified position for nearly six years when, pursuant to its Policy, it could have terminated Plaintiff after 90 days. In sum, the Court concludes that as the undisputed facts reveal that Plaintiff could not perform the essential functions of his job with or without accommodation, he is not a "qualified individual" for purposes of the ADA. Accordingly, Plaintiff has not made out a prima facie case of disability discrimination under the ADA and Defendant is entitled to judgment on that claim as a matter of law.

In his Complaint, Plaintiff alleges that Defendant also violated the ADA by placing him "at the bottom of the list" for overtime. Complaint at ¶ 15. As Defendant points out, however, nowhere in Plaintiff's charge with the EEOC does Plaintiff raise such a claim. Indeed, Plaintiff admitted as much at his deposition. Acker Dep. at 138. Nor did Plaintiff include such a claim in his response to the EEOC questionnaire. Id. at 143. The Third Circuit has held that "the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Atkinson v. Lafayette College, 460 F.3d 447, 453 (3d Cir. 2006) (quoting Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99

(3d Cir. 1976)).  Because neither the charge Plaintiff filed with the EEOC nor Plaintiff's Response to the EEOC questionnaire contain any factual allegations of Defendant's alleged denial of overtime, this claim must be dismissed.

Plaintiff has also asserted a state law claim for wrongful discharge in retaliation for filing a workers' compensation claim.  See Shick v. Shirey, 552 Pa. 590, 716 A.2d 1231, 1238 (1998). Although the Pennsylvania courts have not enunciated the elements for such an action, this Court has analogized such an action to that for retaliatory discharge under Title VII.  See Landmesser v. United Air Lines, Inc., 102 F.Supp.2d 273, 277-78 (E.D.Pa. 2000); see also Christman v. Cigas Machine Shop,, Inc., 293 F.Supp. 2d 538, 543 (E.D.PA. 2003); Kennelly v. Pennsylvania Turnpike Comm'n, 208 F.Supp. 504, 517 (E.D.Pa. 2002).  In order to establish a claim for retaliation under Title VII, Plaintiff must show that:  (1) he engaged in protected activity; (2) he suffered an adverse employment action after or contemporaneously with the protected activity; and (3) there is a  causal connection between his protected activity and the adverse employment action.  See Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 187 (3d Cir. 2003).

There is no doubt that by filing a claim for workers' compensation benefits, Plaintiff engaged in protected activity and that he was terminated at some point after he filed for such benefits. However, Plaintiff has offered absolutely no evidence of a causal connection between his filing for such benefits and his termination.  Indeed, it is undisputed that Plaintiff was not terminated until **nearly six years** after he initially filed for workers' compensation benefits.  In addition, rather than discouraging Plaintiff from filing for such benefits or punishing him for doing so, the undisputed facts reveal that Defendant promptly reported the accident to its workers compensation carrier.  Acker Dep. at 52; Morrow Aff. at ¶ 7.  Plaintiff himself testified that Defendant assisted him in completing the

9

necessary paperwork for obtaining compensation benefits and that Defendant was "helpful" throughout the process.  Acker Dep. at 55, 103.  In addition, Defendant also provided Plaintiff with modified work assignments for nearly six years even though its Policy limited such light duty work to a period of no longer than 90 days.

Plaintiff also contends the fact he was terminated by Defendant six months after an administrative body determined that Defendant's workers' compensation carrier miscalculated Plaintiff's benefits is evidence of a causal connection.  As Defendant points out, however, it was Defendant's workers' compensation carrier, not Defendant which miscalculated Plaintiff's benefits and against whom Plaintiff filed a penalty petition.  In addition, this Court has stated that "if at least four months pass after the protected action without employer reprisal, no inference of causation is created."  Woods v. Bentsen, 889 F.Supp. 179, 187 (E.D.Pa. 1995) ("Temporal link too attenuated to support any inference of improper motive" where Plaintiff was terminated six months after she filed claim for workers' compensation benefits).  Plaintiff testified that approximately six months passed between the resolution of Plaintiff's petition challenging the carrier's calculation of benefits and Defendant's decision to terminate Plaintiff.  Acker Dep. at 103, 111.  Pursuant to Woods, the Court finds that such a "temporal link is too attenuated to support any inference of improper motive."  Id.

In sum, Plaintiff suffered a debilitating injury during the course of his employment.  The undisputed facts reveal that rather than discriminate or retaliate against Plaintiff, Defendant went out of its way to assist Plaintiff by taking Plaintiff for immediate medical attention, promptly reporting the incident to its workers' compensation carrier, helping Plaintiff through the benefits

process and, most significantly, provided Plaintiff with modified work assignments for nearly six years even though its policies limited Plaintiff to a period of 90 days.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DENNIS C. ACKER, | : | CIVIL ACTION |
| Plaintiff | : | |
| vs. | : | NO.  06-CV-03670 |
| COCA-COLA NORTH AMERICA, | : | |
| Defendant | : | |

ORDER

AND NOW, this 5th day of October, 2007, upon consideration of the Defendant's motion for summary judgment and all responses thereto, it is hereby ORDERED that the motion {Doc. # 29} is GRANTED.

Judgment is ENTERED in favor of the Defendant and against the Plaintiff.

The Clerk is DIRECTED to mark this case closed for statistical purposes.

BY THE COURT:

*/s/ THOMAS M. GOLDEN*
THOMAS M. GOLDEN, J.